Mr. Justice Livingston
 

 delivered the opinion of the Court.
 

 This is an action of trover brought by the defendant in error, against the plaintiff and others, in .the Court of Common Pleas, held at Boston, within and for the county of Suffolk, to recover the value of jeighty-six barrels of flour, and sundry other articles, in which judgment was recovered against the plaintiff in error, from which judgment there was an appeal to the Supreme judicial Court, which is the highest Court of law in the commonwealth of Massachusetts, in which judgment was rendered against the plaintiffs in error, for the sum of $2,488 75 cents, and costs of suit, ánd in favour of the other defendants. On the judgment, the defendant below, William Otis, has prosecuted a writ of error to this Court, under the 25th section of the Judiciary Act of .the United States ; and we áre now to decide whether there was- any error in the direction given by the judge before whom this action was tried, and which appears on the bill of exceptions attached to the recora in this cause.
 

 The property in question had been seized by William Otis, as Deputy Collector of the customs for the port and district of Barnstable, in the commonwealth of Massachusetts, under the 11th section of an act in addition to the act, entitled, “ An act laying an embargo on all ships and vessels in the ports and harbours of the United States;” and the several acts supplementary thereto, and for other purposes, passed the 25th April, 1808. On the bill of exceptions, the following facts appear. On the part of the
 
 *585
 
 plaintiff, Lynde Walter, it was proved, that the goods mentioned in the declaration were his property ; that they were put on board of the sloop Ten Sisters, at Ipswich, in Massachusetts, bound for the port of Yarmouth 5 that it was agreed or understood between Walter and Hallett, who was master of the sloop; that the latter was to carry said goods to Barnstable, or to a place called Bass river, in Yarmouth, with orders to sell the same, provided he could obtain a certain price fixed by Walter, otherwise to deliver them to Freeman Baker,' of Yar-mouth 5 that said sloop, on the 19th November, 1808, cleared out at Ipswich, to proceed to the port of Yarmouth, as expressed in the clearance obtained from the Collector at that place ; that said sloop proceeded round Cape Cod to Hyannis, in the town and district of Barnstable, and the master applied to William Otis, a deputy Collector for that port and district, for a permit to land the cargo, which he refused to give, but ordered him not to discharge any thing from the sloop, until he should have a permit so to do. That in a day or two afterwards, Otis came on board the sloop with four men, and seized sloop and cargo, and putting a pilot and crew on board, he sent her to Falmouth, in the district of Barnstable, where Otis had the.cargo discharged and stored, in, and under a dwelling-house in Falmouth : the master forbidding Otis to meddle with the sloop or cargo. The master. also exhibited to Otis his manifest, and swore to the. correctness of the same.
 

 On.the part of Otis, it was proved, that he was deputy Collector for Barnstable — that on the 29th No
 
 *586
 
 vember, 1808, he duly reported to the President of the United States, the detention of this sloop, and her cargo, under and by virtue of the act abovemen-tioned, which detention was confirmed and approved by the President, on the 8th of December, r 1808. That the sloop, when seized, lay at anchor about half a mile from the shore or beach, which is in the town and port of Barnstable, near the centre thereof, six miles distant, from.Bass river, on which Freeman Baker’s house and store, are situated, and. about five miles from the harbour of Yarmouth. That Freeman-Baker’s landing is situate above a quarter of a mile from the mouth of Bass river, xm said river, in the town of Yarmouth, about six miles and an half by water, from where the sloop was seized, and lies to the eastward of Point Gammon. Hyannis, where the vessel was seized, is westward of Point Gammon, 'and in the town of Barnstable. That the sloop, when seized, had not. arrived at the harbour of Yarmouth, but was lying in the port or harbour of Barnstable, about three miíés from the harbour of Yarmouth, which lies east north east from the port of Barnstable, and the. sloop on her way from Ipswich to the place where she was seized, passed the place for which she was cleared, because the weather would not permit the master to get her either into the*harbours of Bass river, or Gage wharf, and because he lived near Hyannis, and wished to see fiis family, and to lay his vessel in a safe place, and to land certain articles of bedding", &c. from the vessel, as it was his intention to strip the vessel when she arrived at Yarmouth. After the master arrived in
 
 *587
 
 Hyannis Bay, it was hie intention to land his cargo at Gage wharf, which is in the town of Yarmouth:
 
 ,
 
 about three rods distant from the line of Barnstable; and about six miles and an half from the place where the sloop was anchored when seized. Between Yar-mouth harbour or Bass river harbour, and Hyannis, or Barnstable harbour, where the vessel was seized, is a long point of land, called Point Gammon, extending several miles into the sea, and the distance. by the nearest course of the ship-channel, or deep water, from Bass river to Hyannis, is ten miles, and in going from Ipswich to Hyannis, the sloop passed Bass river harbour, or Yarmouth harbour and Point Gammon. The cargo, when stored by the Collector, Was some of it in bad and perishable condition, and was put in better order by coopering, &c. before being stored.
 

 * On this evidence, the jury were charged : that under the clearance, the captain had a right to go to any part of Yarmouth with his vessel, notwithstanding it might have been the intention of him and the owner, that.she should goto Bass river-in that town : that if she had been carried beyond Bass river by force of the winds, and contrary to the master’s , intention, and came to anchor in Hyannis Bay, within the limits of the town of Barnstable, for that cause, still, if the jury believed that, in consequence of this state of things, the captain had concluded to give up his intention of going to Bass river, and in lieu thereof, to carry his: vessel to Gage’s wharf, which is within the town of Yarmouth," on the same side of Point Gammon as Barnstable, and to all sub'-
 
 *588
 
 stantial purposes, the same harbour; and foi this purpose, was waiting only for. a proper opportunity to take the vessel into that wharf, they might justly and fairly determine that the voyage was terminated at the time Otis took possession of the vessel.
 

 Whether this part of the charge: were correct, will depend on the true construction of the 11th section of the act of Congress, under, which this seizure .was made, and. which has already, been referred to. Its language is, “ that the Collectors of the customs be, and they are .hereby respectively authorized -to detain any. vessel.ostensibly bound with a cargo to some other port- of the United States,'-whenever, in theif opinion, the intention-is to violate, or eyade any of the provisions of the acts laying an embargo, until the decisión oTthe president of the United States be had thereupon.”
 

 Of ostensible.destination of the Ten Sisters, at the time of her leaving Ipswich, there can he no doubt. This, fronv the manifest, and clearance, was Yarmouth dr Bass, river.. What better evidence* then,, cópld • Otis have of this fact, than that which he acquired from an' inspection of these papers. If, then, such was her ostensible destination at'the time of her. sailing from Ipswich, and ^he had not arrived at'Yarmoutb.or Bass river at the time of seizure,.it would seem, that he. would have á right, under the. provisions of this-section, to detain the Ten Sisters, if in his opinion ah intention-existed of violating the embargo laws, it is not pretended, that, this was not his real ."opinion, or that, for an. honest exercise o'f such an opinión, he.ought to be punished. There
 
 *589
 
 is a confidence placed in the discretion of a Collector, in cases of this kind, which may be abused, but which ought to protect him from loss when there is no reason to believe, as there is not in this case, that the detention proceeded from sinister motives, and not from a conscientious desire of discharging his duty. To subject a Collector, ór any public officer, to such an imputation, when acting under a discretion thus reposed in him, the circumstances ought to be .such as almost to preclude the possibility of his having acted but from some unworthy or dishonourable motive.- The Court is much mistaken, if the facts in this case are such as to lead to this conclusion. The only question, then, is, whether the circumstances were, such at the: time of seizure,, as to confer .on thte Collector, or his deputy, the right of acting under the influence of an opinion, that such illegal intention existed.’ But it is supposed, that the -Ten Sisters, had substantially terminated her voyage, or that being-driven beyond Point Gammon ipto Hyannis Bay, she might lawfully terminate her voyage, and. land her cargo at Barnstable.. If a permit. had been obtained to land her cargo at Barnsta-ble, this árgument would be - entitled to much consideration ;.but when the master of a vessel, bound by her: papers to one port,, applies for a permit to land her cargo at another place,, he cannot, in that way, deprive the Collector of considering the vessel as still
 
 in
 
 itinere, to her original port of destination, and if he suspects such application to be a mere pre-tence to conceal some illicit object, he has as good a right to make the seizure as if a permit had not been
 
 *590
 
 applied for. In the case of
 
 Otis
 
 v. Bacon, 7 Cranch, 596. a permit to land the cargo had been granted before any seizure took place,, which was considered by the Court as evidence of the termination of the. voyage, and that she could not, thereafter, be considered as actually or ostensibly bound to any other port. Nor can the exhibition of the manifest, or swearing to its contents, be considered as equivalent tó a permit to land the goods.. It might, on the contrary, furnish evidence, as it did here, of an ostensible destination from one port Of the United States to another, where she had not yet arrived, and in which case the Collector had authority to act: nor was hé bound to believe, merely. from that circumstance, or from the then situation of the vessel, that such destination was abandoned. On a former trial of this cause, no clearance was produced, and the only testimony on this subject came out on the examination of the master, who declared, that the vessel was bound to Yarmouth or Barnstable. Upon the whole, this Court is of opinion, that the learned judge who tried the cause committed an error in telling the jury that they might fairly and justly determine the voyage was terminated at the time of seizure, if they believed the captain had given up his intention of going to Bass river, and had determined to land his cargo at Gage’s wharf, which, though within the boundary of Yarmouth, is in fact in the'harbour of Barnstable, and that he was waiting only for a proper opportunity to take the vessel into that wharf. Now, this was placing the termination of the voyage, not on thé fact of its having.
 
 *591
 
 actually ended, but on an intention of the master, of Which it was impossible the Collector could know any thing with certainty, who was to judge of his right and duty to make the seizure only from'the papers of the vessel, and the situation in which she was found, which is admitted to have been short of her destined , port» But if a secret intention of the master be permitted to be set up as a ground of dé-cisión, and'this, too, contrary to.the written evidence in the cause, on which alonte a .public officer can act with safety, he would always be exposed to risks which might deter him from acting altogether. The jury, therefore, should have been left to decide .from the. other evidence in the'cause, independent of any secret; or even decláred, intention in the mind of the master, whether the-ostensible voyage was. terminated-or not; and it seems difficult to conceive how their decision could have been otherwise than favourable to Otis. In this part of the charge, therefore, the Court is of-opinion, there is error.
 

 Another part of the Court’s instruction to the jury is also.complained of ; it is, that in which the. Chief Justice remarks, that the Collector had no authority, without the cqnsent of the master, or person having the carte. of the cargo, to unlade it from the vessel and store it. It is not known what influence this opinion had on tpe jury ; but in the unqualified terms in which the Collector’s right to unlade the cargo is denied, this Court does not concur. We have already decided, that with the consent of the master, or agent of the owner, the cargo may.-be landed, but it was not intended to say, that in no other case
 
 *592
 
 eould such landing and storing be justifiable. If it appear that the Collector, during the detention of the vessel, shall,
 
 bona fide,
 
 think it will tend to the security and preservation of the property to unlade it, and will do it at his own expense, it is not perceived why he may not do so, but at the peril of such an act being regarded,
 
 per se,
 
 as a conversion of the property. At any rate, this consequence ought not to follow, unless it shall appear that the property was lost or injured in consequence of such landing. That not appearing to have been the case here, it is not necessary to say what effect such a circumstance could have had in this suit. All that it is intended to say here, is, that a landing for the purposes, and under the circumstances which appear on this record, is not of necessity, or in itself, a conversion.
 

 Judgment reversed, and a
 
 venire facias de novo
 
 awarded.
 
 a
 

 a
 

 Vide ante, vol.
 
 II.
 
 p.
 
 18.